UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:22-cv-81222

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C., a Florida limited
liability company,

      Plaintiff,

vs.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. d/b/a FLORIDA BLUE,

    Defendant.
_____/

## COMPLAINT

Plaintiff, NEUROSURGICAL CONSULTANTS OF SOUTH FLORIDA, L.L.C. ("**Plaintiff**"), a Florida limited liability company, sues Defendant, BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC. d/b/a FLORIDA BLUE ("**Defendant**" or "**BCBS**"), and alleges as follows:

### Nature of Action

1. This action arises out of Defendant's failure to reimburse, or reimburse at an unreasonably low rate, Plaintiff for medical services Plaintiff provided to a patients T.F., H.H., M.K., A.L., A.P., J.R. and P.S. (collectively, the "**Patients**"), covered under health insurance policies issued, insured, operated, and/or administered by Defendant.

2. Plaintiff provided medically necessary services to the Patients consisting of emergency and non-emergency care and surgical management on a variety of neurological

1

conditions of the brain and spine (the "**Services**"), as more specifically set forth in **Exhibit "A"** attached and incorporated herein.

3. Plaintiff performed the Services with the understanding and expectation that Defendant would reimburse it at rates equal to the fair market or reasonable value of the Services pursuant to the requirements of Florida law.

4. Plaintiff's understanding and expectation in this regard was based upon Florida law.

5. Instead, Defendant wrongfully paid Plaintiff at rates below the usual and customary provider charges for the services, in violation of Sections 627.64194(4) and 641.513(5), Florida Statutes, for claims subject to those sections.

6. Further, Plaintiff is obligated by law to provide emergency services and care to Defendant's members, and Defendant is obligated by law to cover those services. Under Sections 627.64194 and 641.513(5), Florida law strikes a balance concerning emergency and inadvertent services and care provided by non-participating providers like Plaintiff. Plaintiff must provide emergency services and care to all individuals presenting with an emergency medical condition, regardless of insurance coverage; and managed care organizations, like Defendant, must reimburse Plaintiff for providing that care to its members according to the dictates set forth by Sections 627.64194(4) and 641.513(5)

7. Section 641.513(5) imposes a requirement on certain managed care organizations "to ensure that the non-participating providers are adequately paid for a service they are required by law to perform." *Merkle v. Health Options*, 940 So. 2d 1190, 1196 (Fla. 4th DCA 2006). Section 627.64194(4) incorporates by reference the reimbursement requirements of Section 641.513(5) and applies them to claims for both emergency and non-emergency services submitted by nonparticipating hospital-based providers to managed care organizations operating preferred

provider networks or organizations (commonly known as "PPO/POS") or exclusive provider networks (commonly known as "EPO").

8. Florida has a strong public policy of protecting both patients who receive medical services in Florida and physicians who provide medical services in Florida.

9. Sections 627.64194(4) and 641.513(5) further Florida's public policy by protecting members of managed care organizations from being balance billed for services subject to those statutes, and by protecting non-participating providers who provide services subject to those statutes from being unfairly or inadequately compensated for services they are legally required to perform.

10. Defendant, as a managed care organization licensed and/or operating in the state of Florida, has a duty under Sections 627.64194(4) and 641.513(5) to reimburse Plaintiff at rates that are, at a minimum, equivalent to the "usual and customary provider charges for similar services in the community," which requires payment at fair market value. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845–46 (Fla. 1st DCA 2010).

11. In this action, Plaintiff is seeking to have Defendant comply with its obligation to pay Plaintiff at rates that represent the "usual and customary provider charges" required by Sections 627.64194(4) and 641.513(5).

12. For the claims at issue in this action, Plaintiff was a non-participating provider with Defendant and, as a result, did not agree to accept discounted rates from Defendant for the Services and did not agree to be bound by Defendant's reimbursement policies or rate schedules.

13. Nevertheless, Defendant has not paid Plaintiff the fair market or reasonable value of its services.

14. The impact of Defendant's nonpayment on the claims at issue is considerable and has left a balance due from Defendant exceeding the minimum jurisdictional limits of this Court.

## Parties

15. Plaintiff is a Florida professional limited liability company with its principal place of business located in Palm Beach County, Florida.

16. Upon information and belief, the Patients are all residents of the state of Florida.

17. Defendant is a Florida for-profit corporation registered to do business in the state of Florida. At all material times, Defendant was a health insurer and/or health claims administrator actively engaged in the transaction of health insurance servicing in the state of, including in Palm Beach County, Florida.

## Jurisdiction and Venue

18. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest, costs, and attorneys' fees.

19. Defendant operates, conducts, engages in, and carries on business in the state of Florida and has offices and agencies throughout the state of Florida.

20. Venue is proper in Palm Beach County, Florida, because the Plaintiff provided the medical services at issue to the Patients in Palm Beach County and because the payments to Plaintiff for the Services were due in Palm Beach County, Florida.

## Facts

21. Plaintiff, through its physicians, provides medical services, including conservative care and surgical management on a variety of neurological conditions of the brain and spine to patients in Palm Beach County, Florida.

22. Plaintiff's physicians are licensed medical doctors practicing in the State of Florida.

23. Plaintiff's physicians specialize in newest techniques for the treatment of neurological conditions of the brain and spine.

24. Furthermore, Plaintiff's physicians are bound by their professional ethics and the medical standard of care to not only render emergency treatment, but also provide continuity of care in the interest of the patient.

25. In exchange for premiums, fees, and/or other forms of compensation, Defendant agrees to administer claims and provide reimbursement for healthcare services rendered to members of its health insurance policies.

26. At all material times, the Patients were each members of health insurance policies issued, insured, and administered by Defendant, which policies provided coverage for services received by Patients and provided in the State of Florida (the "**Policies**").

*Patient T.F.*

27. On or about October 30, 2020, T.F. was admitted to Delray Medical Center on an emergency basis, with weakness and limited function of his lower extremities, and was seen by Evan M. Packer, MD, who works for Plaintiff.

28. An MRI of T.F.'s thoracic and lumbar spine revealed a T10 pathologic fracture with significant epidural cord compression.

29. On the same day, Dr. Packer performed emergency surgery on T.F., including thoracic laminectomy T9 through T11 with resection of epidural tumor and decompression of the spinal cord.

30. On or about November 9, 2020, Dr. Packer performed further treatment on the patient stemming from T.F.'s October 30, 2020 emergency surgery. The subsequent procedures Dr. Packer performed include, but are not limited to, partial thoracic corpectomy T10 with removal

5

of renal cell metastasis, placement of biomechanical interbody device, T8-T12 arthrodesis and T8-T12 posterior segmental instrumentation.

31. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to BCBS for the charges totaling three hundred and eighty thousand dollars ($380,000.00). However, BCBS only paid nine thousand three hundred forty-two dollars and twenty-five cents ($9,342.25) for the claim.

*Patient H.H.*

32. On or about February 7, 2021, Z.O. was admitted to Delray Medical Center on an emergency basis, and was seen by Ronald L. Young, MD, who works for Plaintiff.

33. A CT of the patient's brain showed a right parieto-occipital comminuted skull fracture with underlying epidural hematoma and pneumocephalus. Accordingly, Dr. Young determined that the patient needed an emergency surgery.

34. On February 10, 2021, Dr. Young performed emergency surgery on H.H., including right parietal craniotomy evacuation of the epidural hematoma and repair of skull fracture.

35. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to BCBS for the charges totaling ninety-one thousand seven hundred fifty dollars ($91,750.00). However, BCBS denied the claim and has failed or refused to pay any portion thereof.

*Patient M.K.*

36. M.K. sought treatment from Plaintiff for pain following a motor vehicle accident on or about February 27, 2021.

37. During M.K.'s initial evaluation on March 9, 2021, Evan M. Packer, M.D, who works for Plaintiff, determined that M.K. suffered from significant cervical disease, lumbar

degeneration at L4-L5, significant left lower extremity radicular symptoms as well as severe collapse at L4-L5.

38. As a result, M.K. was admitted to Boca Raton Regional Hospital on or about March 24, 2021 where Dr. Packer performed emergency surgery on M.K., including, but not limited to, a left-sided transforaminal lumbar interbody fusion at L4-L5, placement of a biomechanical interbody cage at L4-L5 and intertransverse fusion at L4-L5.

39. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to BCBS for the charges totaling two hundred and fifty-six thousand one hundred fifty dollars ($256,150.00). However, BCBS only paid seven hundred thirty-six dollars and seventy-four cents ($736.74) for the claim.

*Patient A.L.*

40. On or about April 26, 2021, A.L. was admitted to Delray Medical Center on an emergency basis, and was seen by Lloyd Zucker, MD, who works for Plaintiff.

41. A CT of the patient's brain showed a large right basal ganglia hemorrhage and adjacent vasogenic edema. Accordingly, Dr. Zucker determined that the patient needed an emergency surgery.

42. On the same day, Dr. Zucker performed the emergency surgery on A.L., including right brain path stereotactic guided craniotomy for evacuation of intercerebral hematoma.

43. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to BCBS for the charges totaling fifty-five thousand five hundred sixty dollars ($55,650.00). However, BCBS denied the claim and has failed or refused to pay any portion thereof.

*Patient A.P.*

44. On or about February 28, 2021, A.P. was admitted to Delray Medical Center on an emergency basis, with spontaneous onset of upper left and lower extremity weakness and a sizable intracranial hemorrhage, and was seen by Evan M. Packer, MD, who works for Plaintiff.

45. On the same day, Dr. Packer performed emergency surgery on A.P., including a right frontal craniotomy with evacuation of intracerebral hemorrhage and neuro navigation.

46. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to BCBS for the charges totaling seventy-one thousand one hundred dollars ($71,100.00). However, BCBS only paid two thousand nine hundred seventy-nine dollars and ninety-two cents ($2,979.92) for the claim.

*Patient J.R.*

47. On or about August 26, 2020, J.R. was admitted to Delray Medical Center on an emergency basis, with the acute onset of aphasia, and was seen by Llyod Zucker, MD, who works for Plaintiff.

48. A CT scan of J.R.'s head showed edema in the left temporal region and right frontal region causing significant neurologic deficit.

49. On or about August 31, 2020, Dr. Zucker performed emergency surgery on J.R., including a left endoscopic craniotomy for tumor resection.

50. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to BCBS for the charges totaling seventy-two thousand eight hundred fifty dollars ($72,850.00). However, BCBS denied the claim on the grounds that Plaintiff is not a preferred provider.

*Patient P.S.*

51. On or about February 21, 2021, P.S. was admitted to Delray Medical Center on an emergency basis following a motor vehicle accident, and was seen by Lloyd Zucker, MD, who works for Plaintiff.

52. P.S.'s initial evaluation, revealed a fracture of the facet of C5 and a unilateral subluxation of C5 and C6. An MRI revealed edema in the interspinous ligament.

53. On or about February 23, 2021, Dr. Zucker performed emergency surgery on P.S., including, but not limited to, an open reduction and internal fixation of the C5-C6 fracture and anterior cervical discectomy and fusion of C5-C6.

54. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to BCBS for the charges totaling one hundred sixty-six thousand three hundred fifty dollars ($166,300.00). However, BCBS only paid one thousand six hundred ninety dollars and ninety-five cents ($1,690.95) for the claim.

*Non-Payments and Underpayments by BCBS*

55. Defendant issued the remittance notices of its foregoing underpayments on the Claims to Plaintiff in Palm Beach County, Florida.

56. Plaintiff did not and does not have applicable participation agreements with Defendant, and thus the Claims are considered non-participating or out-of-network claims.

57. Plaintiff never agreed to accept discounted rates from Defendant or to be bound by Defendant's reimbursement policies or rate schedules with respect to the Claims.

58. The amounts Defendant paid to Plaintiff for the Services underlying the Claims do not correspond with the statutory language mandated under Florida law and usual and customary charges.

59. Defendant was and is aware that Plaintiff provided the Services to the Patients and billed Defendant for the medical services Plaintiff's physicians provided to the Patients with the expectation and understanding that its services had been approved by Defendant and that it would be reimbursed by Defendant.

60. Defendant's refusal to pay Plaintiff the fair market value and/or the reasonable value of the medical services Plaintiff provided to the Patients has caused Plaintiff to suffer damages in an amount equal to the difference between the amounts Defendant paid on the Claims and the fair market value and reasonable value of the services Plaintiff provided, plus Plaintiff's loss of use of that money.

61. All necessary conditions precedent for Defendant to perform its obligations occurred or were performed, excused, and/or waived.

*BCBS's Erroneous Billing Practices Caused Harm on Plaintiff*

62. Plaintiff's charges were in amounts that are usual and customary for providers providing similar services in the areas in which the surgeries were performed and represent reasonable values for services rendered.

63. Notwithstanding, Defendant has either not made any payment for the Claims or grossly underpaid the usual and customary rate for the medical services provided to the Patients, as identified in Exhibit "A."

64. Plaintiff is a non-participating, out-of-network provider and is thereby not subjected to any contracted rates or fee schedules with BCBS. Nor is Plaintiff subject to express contractual obligations that in-network, participating providers would be subject to pursuant to their contracts with BCBS.

65. BCBS was aware that Plaintiff, at all material times, was an out-of-network provider.

66. Defendant has failed to pay usual and customary charges to Plaintiff for the medically necessary procedures it provided to the Patients.

67. Except for Patient H.H., A.L. and J.R., Defendant has already adjudicated these claims and determined that all of the claims at issue in this action were for covered services rendered to Patients, and Defendant has already paid all of the claims at issue, albeit at amounts representing a mere fraction of the applicable shared savings rates for the services, the "usual and customary provider charges" for the services, and/or the reasonable value of the services. Thus, this action concerns only the *rate of* payment and not the *right to* payment. The claims brought on behalf of T.F, M.K., A.P. and P.S. do not include any claims in which benefits were denied, nor do they challenge any coverage determinations under ERISA. Furthermore, Defendant, as an out-of-network provider, does not seek payment under the plan.

*Relevant Statutes*

68. Section 641.513(5), Florida Statutes, provides as follows:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a)   The provider's charges;

(b)   The usual and customary provider charges for similar services in the community where the services were provided; or

(c)   The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

69. Florida courts have interpreted the phrase "usual and customary provider charges for similar services in the community where the services were provided" under Section 641.513(5) to require payment of "fair market value" for the services rendered. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC,* 31 So. 3d 842,845–46 (Fla. 1st DCA 2010).

70. Section 627.64194(4) incorporates by reference the above dictates of section 641.513(5) concerning the reimbursement of non-participating providers with respect to emergency and non-emergency services provided to patients covered under a PPO policy as outlined in sections 627.64194(2) and 627.64194(3).

## COUNT I – Claim for Benefits Under ERISA § 502(a)(1)
## (Patient H.H. and A.L.)

Plaintiff re-alleges and re-incorporates by reference paragraphs 1 through 70 as if fully set forth herein.

71. Plaintiff files this action pursuant to ERISA §502(a)(1)(B), 28 U.S.C. §1132, to recover benefits assigned to it by the H.H. and A.L. under an ERISA plan.

72. Plaintiff has provided medically necessary services to H.S. reflected on Exhibit A.

73. Upon information and belief, H.H and A.L.'s benefit plan is a "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1).

74. H.H. and A.L. has assigned the rights to receive health benefits under the plan to Plaintiff.

75. As assignee of the applicable plan, Plaintiff is entitled to recover benefits due to H.H. and A.L. and enforce the rights of H.H. and A.L. under the terms of the plans. In particular, as assignee of the plans, Plaintiff is entitled to reimbursement under the ERISA-governed plan for medical services provided to H.H. and A.L.

76. Upon information and belief, the applicable plan did not prohibit H.H. and A.L. from assigning the rights to benefits under the plans to Plaintiff, including the right of direct payment of benefits under the plans to Plaintiff.

77. Upon information and belief, the plans require reimbursement of medical expenses incurred by H.H. and A.L. at usual, customary, and reasonable rates.

78. Defendant is obligated to pay for medically necessary services, covered services, or covered benefits as defined under the plan.

79. Defendant has breached the terms of the plan by refusing to make out-of-network reimbursements for charges covered by the plan, in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). These breaches include, among other things, refusing to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, for the medically necessary services performed provided by Plaintiff to H.H. and A.L.

80. Pursuant to ERISA § 502(g), Plaintiff is entitled to recover its reasonable attorneys' fees incurred in pursuing this claim.

**WHEREFORE**, Plaintiff demands judgment against the Defendant for the benefits due under the ERISA plan for H.H. and A.L., together with interest, costs, reasonable attorneys' fees, and such other relief as the Court deems proper.

### COUNT II - Violation of Sections 627.64194(4) – Emergency Services
### (Patients T.F., H.H., M.K., A.L., A.P., J.R. and P.S.)

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70 above.

81. Section 627.64194(4) of the Florida Statutes imposes a duty on Defendant, as an insurer to reimburse Plaintiff, a nonparticipating provider, for the Claims performed on an emergency basis pursuant to Section 627.64194(2).

82. Plaintiff has a private right of action under Sections 627.64194(4) to enforce the statutes' provisions against Defendant.

83. At all material times, Plaintiff was a non-participating emergency medical provider that provided services to patients insured by BCBS.

84. Plaintiff provided covered emergency medical services to Patients, T.F., H.H., M.K., A.L., A.P., J.R. and P.S., as defined by Section 641.47(8), Florida Statutes.

85. Patients did not have the ability or opportunity to choose a participating provider who was available to treat them at the time Plaintiff provided the covered medical services to them because Patients. required immediate health care services to treat severe pain or other acute symptoms, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: serious jeopardy to the health of a patient; serious impairment to bodily function and/or serious dysfunction of any bodily organ or part.

86. Plaintiff submitted the Claims for the emergency services it provided to Patient, which Claims were subject to Sections 627.64194(4).

87. Plaintiff and Defendant did not mutually agree on a specific charge for any of the claims submitted for emergency services. Plaintiff did not agree to accept discounted rates from Defendant for the claims, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to the claims.

88. Defendant violated Sections 627.64194(4) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for Patients.

89. As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 627.64194(4), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

90. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims for Patients T.F., H.H., M.K., A.L., A.P., J.R. and P.S. and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the Claims for Patients, T.F., H.H., M.K., A.L., A.P., J.R. and P.S., and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

### COUNT III - Violation of Sections 641.513(5) – Emergency Services
### (Patients T.F., H.H., M.K., A.L., A.P., J.R. and P.S.)

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70 above.

91. Section 641.513(5) of the Florida Statutes imposes a duty on Defendant, as a managed care organization operating the PPO Policy, to reimburse Plaintiff for the Claims according to the statutes' dictates.

92. Plaintiff has a private right of action under Section 641.513(5) to enforce the statute's provisions against Defendant.

93. At all material times, Plaintiff was a non-participating emergency medical provider that provided services to patients insured by BCBS.

94. Plaintiff provided covered emergency medical services to Patients, T.F., H.H., M.K., A.L., A.P., J.R. and P.S., as defined by Section 641.47(8), Florida Statutes.

95. The Patients did not have the ability or opportunity to choose a participating provider who was available to treat them at the time Plaintiff provided the covered medical services to them because Patients. required immediate health care services to treat severe pain or other acute symptoms, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: serious jeopardy to the health of a patient; serious impairment to bodily function and/or serious dysfunction of any bodily organ or part.

96. Plaintiff submitted the Claims for the emergency services it provided to the Patients, which Claims were subject to Sections 641.513(5).

97. Plaintiff and Defendant did not mutually agree on a specific charge for any of the claims submitted for emergency services. Plaintiff did not agree to accept discounted rates from Defendant for the claims, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to the claims.

98. Defendant violated Sections 641.513(5) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the Patients.

99. As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

100. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims for

the Patients T.F., H.H., M.K., A.L., A.P., J.R. and P.S. and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the Claims for the Patients, T.F., H.H., M.K., A.L., A.P., J.R. and P.S., and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

DATED this 4th day of August, 2022.

Respectfully submitted,

**DI PIETRO PARTNERS, PLLC**
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
*Primary Email Address:*
service@ddpalaw.com
*Secondary Email Address:*
nicole@ddpalaw.com
Telephone: (954) 712-3070
Facsimile: (954) 337-3824

/s/ *Nicole Martell*
**NICOLE MARTELL, ESQ.**
Florida Bar No.: 100172
nicole@ddpalaw.com
**TYLER MUTSCHLER, ESQ.**
Florida Bar No.: 1031697
tyler@ddpalaw.com